IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              No. 2:20-cr-02098-WJ-1

ANGEL ALAN MOROYOQUI-ALAMEA,

    Defendant.

### MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCING REPORT

**THIS MATTER** is before the Court following the hearing on Defendant Angel Moroyoqui-Alamea's objection to the Presentence Investigation Report (the "PSR"), which was overruled at Defendant's sentencing hearing on March 1, 2021. For the reasons discussed in this Memorandum Opinion and Order, the Court finds pursuant to U.S.S.G. § 2L1.1(b)(6) that the recommended three level increase to Defendant's sentencing guideline offense level in the PSR for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person was correctly applied.

### BACKGROUND

On September 28, 2020, the United States filed a complaint charging Defendant with conspiracy to transport, move, and attempt to transport and move an alien within the United States by means of transportation and otherwise in violation of 8 U.S.C. § 1324(a)(1)(v)(I). Doc. 1 at 1. On the day Defendant was arrested, he was driving what the arresting officer described as a heavily-tinted 1990s white Chevrolet pickup truck, "either extended cab or crew cab," near Cotton City, New Mexico. *Id.* at 2. The officer passed the pickup truck driven by Defendant, who at that

time appeared to be the sole occupant of the vehicle. The officer, through his dispatch, requested a registration check on the pickup truck and learned that the license plate was either fraudulent or placed on the wrong vehicle. *Id*. It was later discovered that the license plate was fraudulent. *Id*. at 3. The officer initiated a traffic stop and in approaching the pickup truck the officer observed several passengers in the vehicle, some of whom were sitting on the laps of others. *Id*. at 2. The officer also noticed what appeared to be a moving foot beneath a makeshift plywood bed cover bolted to the back.  When he asked Defendant how many other passengers were hidden in the bed of the pickup truck, Defendant responded that he believed there were nine passengers in the bed. *Id*. at 2. The officer then performed an immigration inspection of the occupants of the bed and cab of the pickup truck. *Id*. All of the passengers admitted that they were citizens of Mexico in the United States illegally. *Id*. When other officers arrived, the passengers were told to exit the vehicle. *Id*. The passengers in the bed of the vehicle had no ability to extricate themselves or even move. *Id*.

Defendant driver, as well as the passengers, were then taken to Lordsburg Border Patrol Station for immigration processing. *Id*. When interviewed, Defendant admitted that he knew all of the passengers were illegal immigrants and that there were twenty-one passengers stowed in the pickup truck, twelve in the cab and nine in the bed of the pickup truck. *Id*. The pickup truck was rated for a maximum of five passengers. Doc. 25 at 1. Defendant further stated that he was not paid, but was instructed by unknown men to deliver the illegal immigrants in exchange for his own unlawful delivery into California. Doc. 1 at 2.

On October 1, 2020, Defendant was ordered detained pending trial. Doc. 7 at 2-3. On November 25, 2020, Defendant admitted to the facts underlying his crime and pled guilty to combining, conspiring, confederating, agreeing, and acting interdependently with other persons

whose names are known and unknown to the United States, to transport illegal aliens into the United States in violation of § 1324(a)(1)(v)(I). *See* Doc. 13; *see also* Doc. 16.

On December 14, 2020, the PSR was disclosed and it assigned to Defendant a base offense level of 12 under § 2L1.1(a)(3). Three levels were added to Defendant's base offense level under § 2L1.1(b)(2)(A) for transporting 21 illegal immigrants, and an additional three levels were added under § 2L1.1(b)(6) because such transportation "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." PSR at 5. Three levels were removed for having a "minimal and minor" role in the conspiracy under U.S.S.G. § 3B1.2, and an additional two levels were removed for acceptance of responsibility under U.S.S.G. § 3E1.1(a). *Id*. Defendant's total offense level was therefore calculated at 13 and his criminal history category was determined to be in Category I, resulting in an advisory sentencing guideline range of 12 to 18 months incarceration. PSR at 8.

Defendant objects to the three offense levels added for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" under § 2L1.1(b)(6).

## DISCUSSION

Defendant argues against the application of § 2L1.1(b)(6) by asserting that there is no evidence that he intentionally or recklessly created a substantial risk of death or serious bodily injury and thus, his offense level should be 10, rather than 13, resulting in a guidelines sentencing range of 6 to 12 months. Doc. 24 at 2. Specifically, Defendant argues that the pickup truck was not modified and that he did not drive recklessly or attempt to flee, and therefore he does not meet the criteria for § 2L1.1(b)(6) for the three level sentencing enhancement to apply. *Id*. Defendant's position is contrary to the law.

The standard to which the government is bound when attempting to prove the facts supporting a sentencing enhancement is a preponderance of evidence standard, whereby the government must

3

show that the "existence of a fact is more probable than its nonexistence." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) ("At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence."); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993); *see also United States v. Cox*, 505 Fed. Appx. 692, 693 (10th Cir. 2012). The Court's inquiry regarding whether the enhancement applies "essentially equates to a totality of the circumstances test." *United States v. Munoz-Tello*, 531 F.3d 1174, 1183 (10th Cir. 2008) (citing *United States v. Aranda-Flores*, 450 F.3d 1141, 1145 (10th Cir. 2006)).

Section 2L1.1(b)(6) states that an offense involving the intentional or reckless creation of a substantial risk of death or serious bodily injury to another person will warrant an increase to the corresponding offense level by two, but if the resulting offense level is less than level 18, such offense will warrant an increase to level 18 (the "Reckless Endangerment Enhancement" or "enhancement"). § 2L1.1(b)(6). As to Defendant, this results in a three level enhancement. *See* PSR at 5. The commentary to this enhancement (the "Commentary") states, in relevant part, that the reckless conduct to which the adjustment applies includes a wide variety of behavior such as, *inter alia*, (1) transporting persons in the trunk or engine compartment of a motor vehicle, (2) carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or (3) harboring persons in a crowded, dangerous or inhumane condition. U.S.S.G. § 2L1.1, cmt. n.3.

The Court need not address whether the sealed bed of the vehicle constitutes a "trunk" under the Commentary. While its modification (the bolted plywood bed cover) likely satisfies this requirement and disposes of Defendant's argument that the vehicle was not modified, Defendant's conduct clearly satisfies the second and third examples of reckless behavior set forth in the Commentary. The Court therefore turns its analysis to (2) and (3) above.

At the outset, it must be noted that Defendant's argument is entirely based on an incorrect proposition of law. Defendant claims that because he didn't attempt to flee or harm any passengers

while transporting them illegally into the United States, his conduct cannot satisfy the Reckless Endangerment Enhancement.[1] Indeed, throughout Defendant's objection, this assertion is the foundation for all of Defendant's claims, and he even begins his argument stating: "*In general*, U.S.S.G. § 2L1.1(b)(6) applies where the defendant tried to flee, passengers were injured or killed, or the vehicle was modified and safety was compromised." Doc. 24 at 4 (emphasis added). This position has no support in the law and is, in fact, quite contrary to it.[2] While fleeing from the police or harming passenger aliens may certainly qualify as reckless endangerment under the statute, a lack of this conduct does not preclude § 2L1.1(b)(6)'s applicability. The question here is very simple: did Defendant carry substantially more passengers than the rated capacity of the vehicle, or did he harbor any aliens in a crowded, dangerous or inhumane condition? U.S.S.G. § 2L1.1, cmt. n.3.

There is no question that Defendant's conduct satisfies these requirements. It is clear from the facts of this case that Defendant transported a total of 21 aliens, 9 in the bed and 12 in the cab of the pickup truck. The pickup truck, more than 20 years old, is rated for a maximum of five passengers, not including the driver. While some courts have held that carrying *slightly* more passengers than a vehicle's rated capacity does not warrant the reckless endangerment enhancement,[3] Defendant here transported over four times the number of passengers for which the vehicle was rated with 12 crammed

---

[1] The enhancement has actually "most often been applied when the vehicle driver by the smuggler was carrying more passengers than the rated capacity of the vehicle. . . ." *United States v. Maldonado-Ramires*, 384 F.3d 1228, 1231 (10th Cir. 2004). For cases in which the enhancement was found applicable to defendants who **did not** flee or harm aliens, *see, e.g., United States v. Schaeffer*, 30 Fed. Appx. 704, 705 (9th Cir. 2002) (finding the enhancement was correctly applied when Ms. Schaeffer smuggled an alien across the border in a compartment of a gas tank); *United States v. Briones-Marin*, 632 Fed. Appx. 219, 220 (5th Cir. 2016) (upholding district court finding that harboring 27 undocumented aliens in a small stash-house warranted the enhancement notwithstanding that no one was hurt); *United States v. Vargas-Islas*, 2005 U.S. Dist. LEXIS 15342, 2005 WL 1799250 (D. Kan. 2005) (overruling objection to enhancement because aliens were transported in bed of pick-up truck); *United States v. Maldonado-Ochoa*, 844 F.3d 534, 537 (5th Cir. 2016) (affirming the application of the enhancement where the defendant started to drive with unrestrained persons lying in the bed of his truck, even though he was pulled over as soon as his vehicle began to move and no one was injured); *see also Ruiz-Hernandez*, 890 F.3d 202, 212 (5th Cir. 2018) ("[T]he enhancement applies for creating a risk of harm; no harm at all need actually occur to warrant its application.").

[2] It appears Defendant may be referring to U.S.S.G. § 3C1.2, in which a reckless endangerment enhancement is contemplated in the context of flight. The "substantial risk of death or serious bodily injury" standard also applies to § 3C1.2, and the underlying analysis for determining satisfaction of this enhancement is similar to those at issue here.

[3] In *United States v. Solis-Garcia*, the Fifth Circuit found the enhancement not to apply where the defendant's van carried eight aliens with seating only available for four. 420 F.3d 511,513-516 (5th Cir. 2005). In this case, the van actually had the rated capacity to accommodate the aliens, but the back row of seats had been removed.

into the cab and 9 crammed into the bed under a plywood cover. In fact, the Court stated at Defendant's March 1, 2021 sentencing hearing that it would overrule the objection and apply the enhancement if there had been only the 12 illegal aliens in the cab of the pickup truck or alternatively, if there had been only the 9 illegal aliens in the bed of the pickup truck. Doc. 33 at 7. Defendant's conduct certainly satisfies the plain language of the Commentary as to technical overcrowding and warrants the Reckless Endangerment Enhancement.[4]

There is also no question that Defendant transported the aliens "in a crowded, dangerous or inhumane condition." § 2L1.1, cmt. n.3. In *Munoz-Tello*, the Tenth Circuit affirmed the application of the Reckless Endangerment Enhancement on the grounds that "at least four of [the defendant's] passengers lacked a safety restraint, a situation which the district court rightly regarded as dangerous." 531 F.3d at 1184. Furthermore, the Court stated that "the danger was even more pronounced for the two passengers who [the defendant] concealed in the rear cargo area." *Id*.

The Tenth Circuit also held in *United States v. Maldonado-Ramires* that a defendant's conduct fell well within the ambit of the Reckless Endangerment Enhancement when seatbelts had been removed from a vehicle being used to transport aliens, and cited positively the Ninth Circuit's holding that the Reckless Endangerment Enhancement was appropriately applied where "overcrowding of [the] vans appeared minimal but passengers were not strapped into seats with seatbelts but were instead lying unrestrained on floorboards and across the seats." 384 F.3d 1228, 1231 (10th Cir. 2004) (citing *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027-28 (9th Cir. 2000) (internal quotations omitted)).

---

[4] The Court also takes notice of a national headlining vehicle collision that took place during the drafting of this Memorandum Opinion and Order, in which fifteen illegal Mexican immigrants died when their SUV crashed into a vehicle carrying gravel. The SUV contained 28 aliens, and the California Highway Patrol Chief stated "it was clear that the overpacked vehicle caused 'numerous' passengers to be ejected after the collision." He further stated: "Obviously that vehicle was not meant for that many people," and "[i]t's unfortunate that that number of people were put into that vehicle because there's not enough safety restraints to safely keep those people within the vehicle." McCarthy, Craig, AT LEAST 15 KILLED IN CALIFORNIA HIGHWAY CRASH INVOLVING SEMI-TRUCK, New York Post (Mar. 2, 2021) https://nypost.com/2021/03/02/at-least-a-dozen-killed-in-california-crash-involving-semi-truck/ (last accessed Mar. 2, 2021).

Here, Defendant concealed nine aliens beneath a bolted, plywood bed cover while transporting them from Agua Prieta, Sonor, Mexico to Cotton City, New Mexico (78.5 miles, 1 hour and 20 minutes). Doc. 25 at 1. When ordered out of the bed of the pickup truck, the aliens reported being unable to move due to the cramping they suffered as a result of their confinement to the truck bed for such a long time. PSR at 3. These aliens were unable to exit the bed without the assistance of someone outside the vehicle to open the tailgate. *Id*. Another twelve aliens were observed in the cab of the pickup truck and were reportedly "stacked on top of one another" or sitting on the laps of other passengers. Doc. 30 at 4 (citing PSR at 3). It is impossible for these twelve aliens to have worn seatbelts in a truck meant only for five passengers.

In *United States v. Torres*, this Court incorporated into its review a list of factors articulated by the Fifth Circuit to guide its analysis as to whether a defendant transported aliens in "crowded, dangerous or inhumane conditions." 2020 U.S. Dist. LEXIS 161472, __ F. Supp. 3d __, 2020 WL 5229178 (D.N.M. 2020). While not intended to be exhaustive, this list includes "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs," a lack of which, in each case, may constitute reckless endangerment. *See United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (quoting *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006)). The Government here argues that all of these factors are represented in Defendant's conduct, and the Court agrees that it is reasonable to assume the aliens in the pickup truck bed suffered from reduced availability of oxygen and temperature extremes while hidden under the plywood covering. *See Garcia*, 635 F.3d at 478 (The government must merely prove facts supporting a sentencing enhancement by a preponderance of the evidence.) Notwithstanding, the latter three factors were undoubtedly present as to the aliens in the truck bed; they could not communicate with the driver, they could not exit the bed, and they would certainly face a greater risk of danger in event of an accident. Indeed, as the Court stated at Defendant's sentencing hearing, with only a piece of plywood to cover

them, the aliens in the bed could easily have been ejected or otherwise seriously injured or killed if the vehicle blew a tire, ran off the road, or was forced to a sudden stop. Doc. 33 at 7. As to those aliens *inside* the cab of the pickup truck, they too faced greater risk of danger in event of an accident by virtue of their crowded conditions and lack of seatbelts,[5] and would very likely have been hindered in their ability to exit the pickup truck and faced an increased risk of being ejected from the pickup truck in event of an accident. The Court is unable to find any precedent in which conduct nearly this egregious was found unworthy of the Reckless Endangerment Enhancement. At the very least, Defendant's conduct was reckless—the conditions in which Defendant transported the aliens was extreme enough that he certainly had "a conscious acceptance of a known, serious risk." *See Aranda-Flores*, 450 F.3d at 1145.

Accordingly, the Court finds that Government has met its burden in demonstrating that Defendant transported the aliens in a "crowded, dangerous or inhumane condition," thereby intentionally or recklessly creating a substantial risk of death or serious bodily injury. *See* § 2L1.1, cmt. n.3; U.S.S.G. § 2L1.1(b)(6). The Court therefore reaffirms its oral pronouncement at sentencing that the Reckless Endangerment Enhancement applies.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court finds and concludes pursuant to U.S.S.G. § 2L1.1(b)(6) that the government has established by a preponderance of the evidence that the Reckless Endangerment Enhancement was properly applied, and Defendant's Objection to the Presentence Investigation Report is **OVERRULED**.

---

[5] Defendant contends that a lack of seatbelts is not dispositive of the application of the Reckless Endangerment Enhancement, and the Court agrees. *See, e.g., Solis-Garcia*, 420 F.3d at 516 (The enhancement "does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seat belts."). However, cases like *Solis-Garcia*, and indeed all the cases cited by Defendant and available to this Court in which the enhancement was not applied (or wrongfully applied) for lack of seatbelts, do not pertain to conduct nearly as dangerous as Defendant's conduct in the present case. Ignoring entirely the issue of seatbelts, the Court still finds that the gross overcrowding present in both the cab and the bed of the vehicle is enough to warrant the enhancement.

**IT IS SO ORDERED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE